UNITED STATES of America,
Plaintiff-Appellee,

v.

Ramon CASILLAS–MUNOZ,
Defendant-Appellant.

No. 76–1217.

United States Court of Appeals,
Ninth Circuit.

Aug. 18, 1976.

---

Warren Williamson (argued), of Federal Defenders, San Diego, Cal., for defendant-appellant.

Jeffrey F. Arbetman, Asst. U. S. Atty. (argued), Terry J. Knoepp, U. S. Atty., Jeffrey F. Arbetman, Asst. U. S. Atty., San Diego, Cal., on the brief, for plaintiff-appellee.

Before CHAMBERS, TUTTLE,* and KENNEDY, Circuit Judges.

CHAMBERS, Circuit Judge:

In February 1975, Special Agent Van Patten of the United States Customs Service was called by a local law enforcement officer who informed Van Patten that there were firearms swapmeets held on certain Saturdays in Santa Ana, California. The agents received further information that some of the weapons purchased in these swapmeets were being illegally exported to Mexico. On August 16, 1975, Van Patten and other customs agents went to a swapmeet to observe potential violations of the Neutrality Act. Agents at the swapmeet observed the appellant and a codefendant purchasing rifles, pistols, shotguns and ammunition. During these transactions the purchasers spoke only Spanish.

At 8:35 a. m. the appellant and codefendant left the swapmeet, placed the weapons in a camper truck and drove the camper to a house in Santa Ana. The agents followed the truck on various errands during the day and kept it under observation at night. The weapons were not removed from it.

At 5:25 a. m. the appellant and codefendant entered the camper and drove it onto the Newport freeway. The agents attempted to follow but lost the appellant's truck in the traffic. At 6:00 a. m., the agents decided that they could not find the vehicle and notice was sent to the agents at the San Ysidro border station to intercept the vehicle if it attempted to leave the United States. At 7:15 a. m., the vehicle was stopped by government agents on a four lane highway to Mexico at a point three hundred feet north of the border. There were no more regular offramps on

---

* The Honorable Elbert P. Tuttle, Judge of the United States Court of Appeals for the Fifth Circuit, sitting by designation.

the freeway before the border but there were two areas used to turn vehicles around.

Agent Quintel stopped the vehicle at the border, identified himself, and asked the appellant what he was taking into Mexico. The appellant responded that he had a load of pipe that he was taking to Mexico. The agent then asked the appellant and codefendant to step down from the vehicle. A patdown search was made and the vehicle was driven about 25 feet off the road. A search of the vehicle uncovered various firearms and ammunition.

■ Appellant raises two allegations of error. He argues that the evidence is insufficient to support his conviction since there is no evidence to prove one of the essential elements of the crime. The case was tried by stipulation on a statement of facts made by the government and the testimony of witnesses at a hearing on a motion to suppress the weapons found in the truck. Appellant argues that there is no evidence in this record that he either failed to register as an exporter of weapons or that he failed to obtain an export license for this shipment. We find adequate evidence in the record to support a determination that the appellant did not have a license to export these firearms. In order to obtain a license to export certain firearms, an application must be sent to the Department of State and approved. It is then filed with the District Director of Customs at the designated port of exit. 22 C.F.R. §§ 123.52–53. The appellant could not have secured a license prior to the purchase of the weapons on August 16, 1975 since the weapons have to be specifically identified on the license application. We think that the minimal period of lapse between the acquisition of the weapons and the attempt to export and the fact that the appellant was under observation for all but an hour and fifty minute period of this time between 5:25 a. m. and 7:15 a. m. are adequate circumstantial evidence to prove that they did not obtain a license to export these guns. (We cannot imagine the State Department being open in Southern California before breakfast to

issue firearm permits.) Further, what better evidence could there be that there was no permit than that Casillas-Munoz told the customs agent falsely that he was carrying a load of pipe. Isn't this as good evidence as something belched out of a computer which forms the basis for someone certifying with red ribbon that no permit has been found?

■ We also hold that there was no error in the trial court's failure to grant the motion to suppress the weapons found in the search of the camper. Probable cause is required to search a vehicle leaving the country. *United States v. Gonzalez-Rodriguez*, 513 F.2d 928 (9th Cir. 1975). The break in surveillance does not destroy the existence of probable cause to believe the weapons were in the car. The continuous observation from purchase until 5:25 a. m. meant that at the time the agents lost contact they had probable cause to believe the weapons were still in the camper. In the one hour and fifty minute unobserved period, the appellant and codefendant travelled one hundred miles. This time is consistent with a straight trip with no stops. Thus, the agents still had probable cause to believe that the weapons were in the truck and there had been no stop to unload them. The agents had reason to believe that the appellant and codefendant were taking the weapons to Mexico and not going down to turn around in one of the two turnoffs before the border since the appellant himself stated that he was going to Mexico. The search could be conducted with probable cause in the absence of a warrant due to the exigent circumstances created by the situation of a mobile vehicle on the road only three hundred feet from an international border. See *United States v. Gonzalez-Rodriguez, supra,* at 932. (Duniway, C. J., concurring).

The judgment of the district court is affirmed.